case number 19-2443 and 19-2444, USA v. Jeremy Morton, oral argument not to exceed 15 minutes per side. Mr. Richards for the appellant. Thank you. Good morning, your honors. May it please the court. My name is Ray Richards and I represent the defendant appellant in this matter, Mr. Jeremy Morton. Your honors, I would like to at this time reserve my three minutes of time for rebuttal in this matter going forward. Absolutely. Your honors, before the court, we have multiple issues. Before I foray into the issues I think that are important, I know the court has read our briefs, it's been briefed extensively. If the court has any questions before I move forward, I definitely would like to address the court's questions. What do you think is your strongest argument? I knew the court would ask me that question. Judge, I think the strongest argument probably is the argument as regards the consecutive sentencing as regards the supervised release violation being tacked on to the actual sentence of the court. We believe that the court didn't follow the guideline as regards said sentencing. Also, understanding that the 24 months that was held as being consecutive to Mr. Morton's sentencing. What's our standard review on that issue? Judge, I believe the standard of review on that issue... You're claiming procedural, is this the procedural and reasonableness argument? Yes, your honor. And more... Is the argument made below? Yes, your honor. It's our opinion that the court did not explicitly reference section 7B1.3F at the sentencing hearing pursuant to United States versus Hall Sixth Circuit case. There were, I mean, admittedly there was some discontentment by the court as what the court perceived to be a violation of supervised release, but it's our argument, Judge, that the court did not follow that section of the law. And to go further, Judge, the 24 months that the lower court tacked on consecutively to the sentence of Mr. Morton, since that time, Mr. Morton has gone to trial on that issue and was acquitted earlier this year. So that being said, Judge, there's more reason and there's more background as it regards or as it relates to why that issue, in our opinion, is important going forward. During the sentencing... But can I interrupt and ask you a question, Mr. Richards? I didn't understand this when I read this because your procedural complaint is that the district judge didn't reference 7B.13F, but 7B.1.3F certainly doesn't favor you. It actually would have supported his decision to make these consecutive because that's what the guideline recommends. So I'm trying to figure out what difference it makes. Well, it makes a difference if you apply United States versus Hall case, Judge. I think that our reference of the 7.B.1.3F was more to put it in context, but even still, Judge, we think it's not pursuant to United States versus Hall. And not only that, the language of the court was not explicit as to the reasoning of the court for the consecutive behavior. But the reasons supporting the same weren't very clear, Judge. Basically, what the cases say, as I understand it, and from back when I was a district judge, is that if you've just sentenced somebody on the underlying violation that was the predicate for the violation of supervised release, all the reasons that you state in connection with what I'll call the main sentence then can be deemed to also apply to the decision to be concurrent or Well, that being said, Judge, I mean, to be very frank with the court, I mean, I think there was a situation that the issue should have been litigated as it regards that issue. Here we have a sentence. Were you the attorney at the time? Unfortunately, Judge, I wasn't. So I've forgotten. I'm sorry, I don't remember the answer to this question. At the time that Judge imposed the sentence and arguably failed to reference the factor, was there an objection made? Well, first of all, was the BOSTIC question asked? And if so, was there an objection to this failure to articulate 7B1.3F? Very candidly, Judge, trial counsel indeed failed to object in that regard. So plain error applies. So why was there an objection? All you do is cite Hall. You don't tell us what Hall says on page 43 of your brief. Correct, Judge. As it was stated in our brief, Judge, to show plain error, the defendant must show error that was obvious or clear and that it affected the defendant's substantial rights and that it affected the fairness, integrity, and public reputation of the judicial proceedings. Judge, in this case, under the circumstances, we believe in a sense that his due process rights were violated, understanding that, to put this in context, he's at a sentencing. At this sentencing, a video is played as it regards to support the supervised release of violation. From my pounce upon the defendant at the last minute, that the review of the video had, and I have to admit, it was very graphic in what it showed. But that being said, Judge, going forward and understanding the result of the case as it stands today, he was found not guilty of his actions in that video. Still, I think it goes to show that, in effect, if he was allowed to defend and or have an opportunity to rebut and or challenge what was going on in that video, it may have been a different result. That being said, that's where we believe that the plain error as it regards affecting his substantial rights. His rights were affected because, obviously, and it was affected adversely because he was sentenced to First question, I might have started with an argument that didn't require us to look at it under plain error. One of those is your suppression argument, and I think the gist of your argument is that there was no basis for a Terry stop of your client simply because he had left one hotel and gone to another, and there was no basis to arrest him and seize the cash on him simply because he was found with a lot of cash in a hotel. Yes, Judge. We're not doing any argument justice, but can you talk about that point for a minute? Well, Judge, we believe, well, that argument is a two-pronged argument. First of all, there was no probable cause as it regards to stop him for a Terry stop under the circumstances. There was nothing, any type of credible information as it regards any type of activity. Even though he was being surveilled, he wasn't being seen to be doing anything wrong. The second part of that- He was being surveilled because of concerns that he was involved in a series of murders, series of shootings, right? That is correct. Not for drug activity. That is correct, Judge, in that case, which Judge, I guess, goes to my second prong as it regards why that situation is appealable and we believe improper. We believe that if the money had been, you know, suppressed, I mean, the prejudicial value of that money being admitted into the trial not only made the prosecution's case, it was an illegality or actually the fruit of an illegal search. For the government to say that it was harmless goes without saying. It goes straight to the elements that are required of the jury structure. So that being said, that argument based on the fact that he shouldn't have been stopped, even though there was an investigation, I mean, obviously the situation, they need a little bit more than that. That's just suspicion. Again, suspicion based on a lot of credible and incredible evidence going forward. Having money, I mean, I guess having a bunch of money doesn't- might be suspicion of a drug crime, but there was, my understanding is there was no evidence of him being engaged. Other than a prior crime, there was no evidence of him being engaged in current drug activities. He's under suspicion, right, for his participation in a series of murders and the cash doesn't seem- And not only that, Judge, cash is not an element of a murder case, especially understanding that it's not having to do with murder for hype. So that being said, again, it's one of those situations in this case and all the cases that are connected to it seems like one way or the other as regards Mr. Morton. That evidence should have been suppressed and that is the crux of the prosecution's case going forward as regards any type of conviction based on that case. When we're talking about probable cause to stop this guy, they stop him after he leaves the hotel, right? Yes. And am I not correct from the, at least what seemed to me to be the most important of these facts, the officers had reason to believe that in connection with investigating your client for this murder, that he was holding burns against his will in the hotel room in the hotel that he just left. There's no dispute about the fact that police thought that, right? Well, that was their that's clear. They had information that would, that would suggest that whether ultimately it turned out to be true or not. Well, then not only that judge, he was not charged with kidnapping. I mean, I understand that. Right. I understand that. But the point is they believed from people from, from what people told them that he was holding burns against his will in the hotel is that not alone? Ignore everything else. Why is that not sufficient to stop it? Because I don't, I don't think it's based on credible information and belief judge. I really don't. I mean that there was no other corroborating evidence to show that. And not only that he wasn't charged with any type of kidnapping. There weren't any facts or, or any type of testimony that, you know, this person was being held against their will in this regard. I just think, you know, if anything else, it was, you know, some type of pretext going forward to, to initiate the stop in order to lead to investigation of all other type of issues that seemed to have been predicated or, or amongst this case or being as a basis of this case. Judge, I see my time is up. Thank you. Any other questions from the panel? Okay. Thank you, Mr. Richards. Mr. Greeley, we'll hear from you. Thank you, Your Honor. May it please the court. Theodore Greeley from the United States Attorney's Office for the Western District of Michigan. I'd like to dive directly into the motion to suppress here and answer some of the questions regarding harmless error that were raised when my colleague was up. In this case, you get rid of the money, you get rid of the 404B evidence, and the government still has distribution quantity of drugs in distribution packaging. You're cutting directly to harmless error? I am because the court had some of those questions on that, Your Honor. I just want to make sure I understood. Thank you. So in terms of the harmless error, we still have a distribution quantity of drugs by a specialized environment in distribution packaging. He explained that we're not talking about something that's close, right? A user quantity of drugs is 0.1 grams. We have 10 grams. We have roughly 100 times that. So assuming the court finds for Mr. Morton and everything else, we still think that harmless error supports the conviction and would result in the affirmance of distribution. And in terms of attribution, there was plenty of evidence in that hotel bathroom, including Mr. Morton's fingerprints on the top of the toilet tank, as well as the video showing him going in and out of the bathroom. But I don't think the court necessarily has to get to harmless error because as the district court found here, there was probable cause to arrest Mr. Morton at the time of the stop in Comfort Inn in Grand Rapids. Specifically, as the district court found, they have these statements from various witnesses tying Mr. Morton to the shooting of Diedrich Bryant and tying Mr. Morton to the killing of Darnell Burke on August 30 and now on September 5th. And that investigation had come through various witness statements that led to them finding Mr. Morton was also keeping Mr. Burns and Mr. Fousey either against their will or to avoid additional protection. You know, in terms of probably the three most important facts tying Mr. Morton to the murder of Mr. Bryant, I think it's what happens outside the East Park Manor on August 30, specifically the exchange of guns before Mr. Fousey and Mr. Burke go in and the shooting occurs and Mr. Morton tells the women to leave after telling them that this is what we do or something to that effect. Second is Mr. Morton coming back to his residence and discussing the shooting and also having a gun or some mention of a gun that evening. And then the third is Mr. Fousey telling Mr. Edwards that he went into the East Park Manor that evening with a gun he got from Mr. Morton at Mr. Morton's direction. So is all that the justification for a Terry stop or for an arrest or both? I think that's the justification for the arrest, Your Honor. In terms of the Terry stop, why didn't you just get an arrest warrant? You got a search warrant. Well, Your Honor, I don't know why the officers decided not to get an arrest warrant at that time. Our theory is they could have. They decided to take this investigatory action and I guess that's the record that we have before the court. I can't say why they decided to or not. They ultimately decided that they weren't going to do that at that time, but the government believes they did have sufficient evidence to get an arrest warrant for the murder of Mr. Bryant. And you're not you're not linking the money then to to the basis for the arrest. You're not linking the money that he had on him to the to the murders he was suspected to have committed. I know, Your Honor, I'm not claiming that that money was somehow related to a murder for hire ply or perhaps I'm not understanding. Well, I just I mean that one argument would have been the money finding the money on him was a basis to go from a stop to an arrest. You're not I don't think you're arguing that, which is fine. You have other you have other arguments, but they obviously moved to suppress. They moved to suppress the cash. Correct, Your Honor. So we think they did have a basis for arresting at that time, but I do agree with you that the money doesn't add to the probable cause for murder. It does add in terms of the reasonable suspicion for the Terry stop, which I think is where the court was going. As Judge McKee noted, they have this information specifically from Mr. Burns' daughter, as well as Martha. And she has said she got a call from Mr. Morton that they said that Mr. Morton and Mr. Burns said that they were together. Mr. Burns told her about it, that he could not leave her and that he was with Mr. Morton. So based on that, we think there's a reasonable suspicion that when Mr. Morton was coming out of the quality mint and walking over to the Comfort Inn in room 106, Mr. Burns, either they were against his will or they were hiding out. Well, as Mr. Fusay said, the rest of them weren't. It's a little hard to hear you. I'm sorry. It's a little hard to hear you. I think maybe your voice drops. I'm sorry, Judge McKee. I agree. The audio is not good here, so if you could stay up closer to the mic. What I was going to ask you, Mr. Greeley, is that when I asked the question about whether there wasn't adequate information to stop him, Mr. Richards' response primarily was that the source of the information the police had about Morton's involvement in the murder was not credible. I know we're not analyzing the sufficiency of an affidavit for warrant purposes here, but if we sort of look at it along the same way, this was not an unknown informant, right? That is correct, Your Honor. So they knew who this was. It was Burns' mother. Correct. It was Martin. So I'm not asking you to make Mr. Richards' case, but has anything come up in this case that would suggest that she was not a competent source of information for the police? I'm aware of nothing, Your Honor, and there's certainly nothing in this record that suggests she was not a competent and credible witness for purposes of the investigators in this case. And that information was that Morton was holding Burns against his will. Well, specifically, she said that she got a call from her son, and her son told her that he was with Mr. Morton and that he could not leave. Now, to my mind, there are two reasonable interpretations. One is he's being held against his will. That's what he literally said, I cannot leave. The other interpretation is that he knows that he was involved in the murders of Mr. Burns, was involved in the murder of Mr. Burns, and he can't leave because there's a material witness worn out for him or because he committed a felony with the arresting on site. So I think either one of those would provide probably our least reasonable suspicion to be looking for Mr. Morton, because as we note in the brief, there's the unlawful restraint possibility. There's also the harboring possibility. Under the harboring, you have to essentially keep somebody in a location so that they can avoid an arrest warrant under those for reasonable suspicion. The court can look to accessory after the fact, but based on the information here, it appears that Mr. Morton is keeping or holding these individuals in this room for purposes of avoiding an arrest warrant. So in terms of reasonable suspicion, we think it's clear that on these facts that the officers did not have the opportunity to have the initial carry stopped. Once we have the initial carry stopped, the question is what happens next? And our theory is that that was an investigatory decision, a reasonable one at that, because looking at the duration prong and the scope prong that have been announced in cases like the Sharp, here, there really wasn't anything else, at least from our perspective, and there hasn't been any proposal from the defense of what the officers should have done differently under these circumstances. I don't think the defense necessarily contests that there's information in these records that suggests that Mr. Fusay was involved in two shootings, and some evidence suggests that Mr. Burns was involved in the shooting of Mr. Burns. And if you're about to go and execute a search warrant across the road, it seems to me the reasonable thing to do is to hold the person who just came from there so that he cannot notify the individuals there and presumably increase the officers who are about to execute the search warrant. So it's a reasonable or it's a lawful carry stop followed by a reasonable carry stop. Are there any other questions on the reasonable suspicion component to this? Does the panel have other questions on this or any other issues? I would. Go ahead. Thank you. I would like to turn to the attenuation documents briefly, Your Honor. I don't think there's much disagreement between the parties on the first prongs. The only question is the purpose and flagrancy of the alleged violation here. I think it's important to look at the district court's decision on reasonable suspicion and investigatory detention that followed because the purpose there has significant fit with the purpose on the attenuation document, specifically finding that this was a reasonable action because of the law enforcement who were about to execute the search warrant. In terms of the 404B evidence, I don't know if the court has any questions on it. It didn't really come up in the initial portion by Mr. Richards, but if it does, I'd be happy to answer those. Under the abuse of discretion standard, it seems to me that the evidence of his prior conviction was appropriate. Finally, to Judge Raylor's question on the 7B1.3 and the consecutive sentence, it is viewed for an abuse of discretion. To Judge McKeague's question, at this point, it is subject to plain error review. We do believe that even if it's not subject to plain error review, it's not an abuse of discretion. The district judge did specifically reference back to his earlier finding, and under the Briggs and Cochran case, we cite in our brief that it's appropriate. We also cite to the King case in our brief, which says the district court doesn't have to specifically say, I'm going to look at 7B1.3, but under these circumstances, it's enough just to have a reference to it, which the district court here did by referring to reference that it had discretion to oppose a consecutive sentence, and it decided to do so. So on that, I don't see an abuse. Go ahead, Your Honor. Mr. Greeley, I was a little bit confused by Mr. Richards' argument, so I'll ask you to clear it up, and then he'll have knowledge of what my confusion was if he wants to speak to it as well. Again, I'm sorry that I don't remember exactly in this case, but when the district judge went for the supervised release violation, was that something that he had admitted to, or had he denied it and the judge had found he committed the offense? The judge found he committed the offense, Your Honor, and it was my understanding that was based on the conviction, not based on the other information that came out about an assault at the Nuevo County Jail. Well, that's what I'm trying to figure out, because he's on supervised release. He's arrested in connection with the murder and or drug deal, whatever it was. That's a violation by definition then of the terms of supervised release once he's been found guilty of the offense for which there was a violation of supervised release, right? That's correct, Your Honor. So at that point, the sort of typical sentencing of the hundreds that district judges do is that you look to see whether there's adequate punishment for both acts if you run them concurrently. And if you determine it's not adequate punishment for the reasons that you articulate, then you run it consecutively, which is what the guideline says to do. So this doesn't seem to me to be in any way out of the ordinary here to find that he's convicted of a drug offense, he's put on supervised release, he's told don't do it again, and then he shortly thereafter does it again. I agree with you, Your Honor, and that's actually what 7B.1.3 calls for, because there's a presumption that under these circumstances, the sentence would be consecutive. So it's hard to say that the district court abused its discretion when it did what the guidelines actually called for, at least presumptively. So I think what Mr. Richards is arguing is that had he been given the opportunity, he would have had an argument as to why not to impose it consecutively. Did he have the opportunity to make that argument? He certainly had the opportunity to make the argument, and the defense counsel in the trial court argued that it should not be imposed consecutively based on the length of the underlying predicate offense or the federal drug conviction. So in terms of that, I don't understand the argument that he didn't have the opportunity to make the argument. He had the opportunity, he made the argument, the district court rejected it, and then the Bostick question was asked and they didn't render the objection. All right, thank you. In terms of this case, Your Honor, we think that the record is clear that there was no, uh, that the court properly found that the motion to suppress should be denied. The 404B evidence was properly admitted that Mr. Morton was a career offender and that the other, the other arguments by defense are appropriately, well, that ultimately the district court or the district court should affirm for the reasons we say in our brief on the other issues. Thank you. Thank you very much. Uh, Mr. Richards, you have three minutes. And please unmute, unmute yourself. I'm muting myself, it might help. Um, I'll, I'll be brief, but I would just like to, the court raises some good issues, good questions as regards to, uh, how a lot of these cases fit together. But the two issues I want to, to, uh, to rebut or address are the regarding the reasonable suspicion analysis, so to speak, meaning that we've had this conversation regarding the facts of what happened. Um, I believe that it was made very clear by Ms. Burns as it regards her communication with her son, that it was indicated that he couldn't leave. No one said he was being kidnapped. No one said he was being held against his will and for a trained law enforcement to have to make the interpretation of, well, no one said something was wrong. If anybody's going to tell someone something's bad has happened to them, it's going to be their parent. So I think more, it's more of an interpretation of if he has to interpret he or she being law enforcement should look a little closer for corroborating evidence, being that it's not clear if he's being held against his will or not. If he can't leave, he may can't leave. Again, we're interpreting it. We have to interpret it and the law enforcement has to interpret it. They're duty bound to get more corroborating evidence before they go and take someone's liberty, freedom, or violate their rights. But let me ask you this question, Mr. Richard, just, just to make sure I understand in, in the recitation of the facts, uh, in the judge Maloney's opinion, denying the motion to suppress, he talks about how Burns told Edwards that they had Boyd in a hotel room when we're feeding him pills and alcohol. And that after taking care of, of Byrd, they were going to go in hiding at a Morton's residence in Detroit. Did the police know about that at the time that they were trying to execute the, the, that they were trying to get into the hotel room? It's my understanding. It's my understanding, Your Honor, that they did not, that was those allegations or that story or that theory came after the fact as a part of their investigation. Okay. Thank you. And so the other issue judge as regards to supervise release question that judge McKee raised as regards to the time judge in this, in this situation, the supervised release issue was an aggravate was an aggravated type type issue with the jail tape and the assault things that nature from the sentencing of Mr. Morton, the drug issue as regards to the conviction was a minor issue. This new tape, which came at the surprise of, of the defense council was more of an aggravating factor. And I think that's where the court after reviewing this tape went forward and made the comments of, of, of disappointment that the court made as regards to the alleged actions of Mr. Morton. So that being said, judge, we think admission of that tape was inappropriate in that that tape was more of an aggravating factor than it was having anything to do with the sentencing. Therefore, I don't, I don't persuading the judges. I don't remember anything. I don't remember anything in your briefing complaining about the admission of, or the review by the judge of a videotape. Is that it? Did you argue that? Well, judge, as a part of the sentencing, the assault at the I think it's a white cloud jail there in West Michigan was introduced at the supervised release hearing slash sentencing. So that was at issue at the time that Mr. from my understanding was being sentenced. Okay, fine. But I'm just asking you, did, did you, did you appeal on that basis? I believe we did mention that in our brief judge as regards the tape. I just didn't remember that. That's okay. I'll check. Thank you. Thanks, judge. Thanks panel. Both of you. The case will be submitted. Thank you.